DEE SPARKS v. THE STATE.

No. 4104.    Decided June 7, 1916.

**1.—Assault to Murder—Evidence—Threats.**

Where, upon trial for assault to murder, the defendant at the time he made the threats to kill someone in the conversation between the witness and the defendant was concerning and about the prosecutrix, and no other inference could be drawn than that he alluded to her, the same was admissible in evidence.

**2.—Same—Identity of Defendant—Evidence—Voice—Charge of Court.**

Where, upon trial of assault to murder, the evidence disclosed that the defendant and the prosecutrix had theretofore been criminally intimate; that prosecutrix had discarded the defendant; that they had slept in the same bed, etc., and that on the night of the shooting someone came to the window where she lay in bed, and after making threats shot her; that she recognized the defendant by sight as well as by his voice, the same was sufficient identification and the court correctly refused requested charges that unless defendant saw prosecutrix and she saw him, to acquit him.

**3.—Same—Evidence—Newly Discovered Testimony.**

Where the newly discovered testimony disclosed that a person lying on the bed where prosecutrix lay when she was shot could not recognize a person on the outside of the window in the night, but the testimony of the prosecutrix was that she not only recognized the defendant by personal sight of him but by his voice and repeated the language he used, and that she had been intimate with him before, there was no error in overruling the motion for new trial on that ground.

Appeal from the District Court of Taylor. Tried below before the Hon. W. P. Mahaffey.

Appeal from a conviction of an assault to murder; penalty, two years imprisonment in the penitentiary.

The opinion states the case

*Harry Tom King*, for appellant.—On question of threats: Wade v. State, 172 S. W. Rep., 215; Fuller v. State, 113 S. W. Rep., 540; Bradley v. State, 111 S. W. Rep., 733; Garrett v. State, 106 S. W. Rep., 389; Barbee v. State, 97 S. W. Rep., 1058; Lucas v. State, 95 S. W. Rep., 1055.

On question of court's refusal of requested charges: Thomas v. State, 131 S. W. Rep., 314; Jackson v. State, 114 S. W. Rep., 136.

Upon question of newly discovered evidence and insufficiency of evidence: Cockerel v. State, 160 S. W. Rep., 343; Henson v. State, 168 S. W. Rep., 89; Cooley v. State, 156 S. W. Rep., 192.

*C. C. McDonald*, Assistant Attorney General, for the State.—On question of threats: Howe v. State, 177 S. W. Rep., 497.

HARPER, JUDGE.—Appellant was convicted of assault to murder and his punishment assessed at two years confinement in the State penitentiary.

In the first bill of exceptions it is contended that the court erred in permitting the witness Hattie Chandler to testify as hereinafter related. She testified that she and Ethel Wyatt were at an entertainment given at the residence of Tom Smith. That while there appellant also came to the entertainment, and while there had a conversation with her, and she testified: "He was talking to me about Ethel Wyatt. He asked me who she was with and I told him she was by herself, and he asked me had she said anything about him, and I told him no, and he said, 'Well,' he says, 'I spends my money on the·son-of-a-bitch and

if she don't treat me right I will kill her.'" Appellant contends that if appellant did use this language he did not'individuate Ethel Wyatt. We think, taking the conversation as a whole, no other inference could be drawn, for the witness says he was talking to her about Ethel Wyatt at the time he used the language he did. Taking also the testimony of the prosecuting witness, Ethel Wyatt, as to the remarks he made to her that evening, it is clear that, if appellant made the remark, he had reference to Ethel Wyatt and no other person. The prosecuting witness testified to going from the party to her home at Judge Tillet's, she staying in the servants' house; that shortly thereafter she went to bed. She then testifies: "The first thing I noticed about anyone being around there was when Dee Sparks called me by my name three times. I know it was Dee because I saw him. I recognized him also by his voice. He called me and says, 'Ethel'; and he waited a little while and he called me again, and he called me again, and he says, 'Well, then you ain't going to talk is you?' I didn't say anything to him, and he says, 'Well, you G—d d—n m—r f—r, you will say something.' I said he called me three times by my name, Ethel. And he said, 'Well, then you ain't going to talk is you?' and I didn't say anything to him, and he says, 'Well, you God d—n m—r f—r, you will say something.' He was standing right up to the window when he made that statement. The window was closed. That is all he said. I were laying on the bed when he said that, *where I could look out the window.* I called Mr. Tillet and it was a good while before I got him awake, but after the last statement that he made, he shot me."

The shooting was placed at about 3 o'clock in the morning and appellant requested the court to instruct the jury, "that unless they believed beyond a reasonable doubt that Ethel Wyatt could and did see and recognize appellant to acquit him." Under the evidence in this case, wherein the prosecuting witness testified that appellant had been sleeping with her, and knew the location of the bed as being next to the window, and that she recognized his voice, it would not entitle appellant to an acquittal if she did not see appellant. It may be that she could only see the bulk of a person, but she testifies positively to him calling her three times, and to other remarks, and that she knew his voice. Appellant also requested the court to instruct the jury that before they would be authorized to convict they "must believe beyond a reasonable doubt that appellant could *see* the prosecutrix on the bed." This is not the law and the court did not err in refusing to give the charge. It would be immaterial whether he could see her or not, when the record shows that he had been sleeping in the bed with prosecutrix; knew its location, and it was next to the window, and he fired directly through this window—the ball striking the prosecutrix in the stomach.

The only other ground alleged is that the court erred in refusing to grant a new trial on account of alleged newly discovered testimony. The witnesses swear that since the trial they have gone to this house in the night-time, one lying on the bed, and the other standing just

outside the window, and that a person lying on the bed could not recognize the person on the outside of the window in the night-time when no moon was shining. If the prosecuting witness had tied her identification of appellant to a personal sight of him, there might be some merit in this application, but the woman, as shown by her testimony hereinbefore copied, said she recognized his voice, and repeats the language he used on that occasion.

There is no contention made that one could not hear another speak, when occupying the relative positions, and it seems to be conceded that one could be heard, and it is also conceded that one lying in the position described could see the bulk of the person on the outside, and it is the most natural thing for a person to say, who recognized the voice speaking to her at the same time seeing the bulk of this person, that she both saw and heard the man, and knew who it was, for she recognized him by his voice.

The judgment is affirmed.

*Affirmed.*